PETER BRADY, PLAINTIFF, DEFENDANT IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Argued February Term, 1907—Decided September 16, 1907.

1. In an action by a motorman for damages arising from an injury alleged to have been caused by the negligence of the defendant in failing to supply efficient brakes, controller and sand-box for its car, the trial judge charged that there could be no recovery on the ground that there was negligence of the defending company respecting the sand-box, and left to the jury only the question of its negligence respecting the brakes and controller.

2. It appearing that there was no evidence to support the judgment against the defendant upon the questions submitted to the jury, this court will not consider on this writ of error the correctness of the ruling respecting the sand-box, because if that ruling were erroneous, the defendant is entitled to have the question of its negligence in regard to the sand-box passed upon by a jury.

On error to the Essex County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRETSON and REED.

For the plaintiff in error, *John A. Bernhard* and *Hobart Tuttle.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

REED, J.   Peter Brady, the plaintiff, a motorman in the service of the North Jersey Street Railway Company, about

nine o'clock on the morning of February 19th, 1903, was driving a car along Clifton avenue, in the city of Newark. While on the block between Orange street and the tracks of the Delaware, Lackawanna and Western railroad, he saw the crossing gates of the railroad descend, and tried in vain to stop his car. The car crashed through the gates, on to the railroad track, and was struck by the locomotive of the Delaware, Lackawanna and Western Railroad Company's train. The car was crowded with school children, and the havoc to life and limb was so terrible that the accident has been since known as "the Clifton avenue disaster."

The plaintiff was injured in this accident and has brought this suit for damages and secured a verdict against the defending company.

The gravamen of his complaint is that he was unable to stop the progress of the car in time to escape the collision because of the insufficient equipment of the car. His specific complaint is that the brake and the controller were not in proper condition, and that the defendant had negligently permitted the sand-box to become and remain out of repair, so that it would not discharge sand.

The question respecting the insufficiency of the brakes and controller, and the question of the company's negligence respecting the operation of the sand-box, are separated by considerations which will be hereafter mentioned.

Respecting the company's negligence in connection with the brake and controller, the following facts appear: The plaintiff, as already observed, was on the 19th of February running his car on the Clifton avenue line; he had made two round-trips over this route, each trip occupying about forty-five minutes; he was completing the third trip, and had arrived and stopped at Orange street. Clifton avenue, along which he was running, was crossed by Orange street and the tracks of the Delaware, Lackawanna and Western Railroad Company. The distance from Orange street to the gates enclosing the railroad tracks was about one hundred and ninety-two feet, with a decline in grade toward the railroad of one and three-quarters feet in the first fifty feet,

of one and five-sixths feet in the second fifty feet, of about two feet one inch in the third fifty feet and a decline of about one foot two and one-half inches in the last forty-two feet. After stopping on the further side of Orange street he passed over the street, his car proceeding at a gait about as fast as a man could walk toward the railroad.

The plaintiff says he knew the rails were slippery. He says that when he was about half way down the slope between Orange street and the railroad track he saw the gates of the railway descend. He then tried to stop the car, but could not stop it because the brakes would not hold, and the car slid and there was no sand to give the car a hold. He says, again, that the sand-boxes did not work and the car was continually sliding. Then he says he released the brake and drew the reverse—using the power to go back—and kept the brake quarter way on, so as to give the power a chance to take, and kept moving his hand on the brake, moving it slowly, with the power turned on full to go back, but the power would not take, either; the car continued sliding for about half way in the block. Again, in answer to the question, "Now, you say the brakes would not hold; what do you mean by that?" He replied, "I said they would not stop the car."

This testimony supports the theory that the motion of the car continued, notwithstanding the fact that the brakes had stopped the revolution of the wheels. This theory is further supported by the testimony of the superintendent of the line, who examined the car in less than half an hour after the accident, and found the brake shoes tight up against the wheels, the wheels being locked in the brake shoes. That the brakes were doing their proper work seems also obvious from the fact that the plaintiff had safely driven the car down this very incline on his two previous trips.

Nor is the plaintiff's testimony respecting the defect in the controller possessed of any more substance. The operation of what is termed the controller is not clearly indicated in the testimony, but the defect charged seems to be that upon reversing the motion of the car wheels, for the purpose

of arresting the forward movement of the car, that purpose was not obtained. The car still moved or slid forward.

. There is absolutely nothing to show that the wheels, when free from the clutch of the brake, did not or would not revolve in answer to the controller. The plaintiff's own testimony regarding the efficiency of the brakes and controller shows that the failure to stop the car was attributable to the condition of the streets, coupled with the weight of the car, which together rendered the locked or reversed car wheels useless, in the absence of sand upon the rails to furnish traction, i. e., sufficient friction to countervail the momentum of the car.

In respect to the alleged entry in the motorman's book of a defect in the brake and the sand-box of this car, it may be remarked that if this entry is evidential at all, in view of the fact that Stickels, who was alleged to have made the entry, was present at the trial, it is only claimed to be evidential as notice to the company of any defect, if any existed.

If, however, it should be conceded that there was some evidence of defect in the brakes or controller, it seems impossible to escape the conclusion that such defect must have been discoverable by the plaintiff himself in the two previous trips he had made over the same route.

Indeed, the plaintiff stated on the trial that on the last half of the third trip made on the morning of the accident he found that the brake repeatedly failed to do its work. He said: "I cannot tell you how many stops I made on the last half of the third trip, because I made many." He was asked, "How did you stop your car during this trip?" He replied, "Well, I stopped the best I could, but very often carrying persons quarter ways in the block—away from the corner."

"Q. Why was that?

"A. Because the brake wasn't taking just so.

"Q. How does a brake 'take,' as you call it?

"A. Well, when you put it on, it will stop the car.

"Q. Blocks the wheels?

"A. Yes, sir.

"Q. Stops the wheels from going around?

"*A*. Yes, sir."

So far as concerns the alleged negligence of the defendant in respect to the sand-box, it is to be observed that the feature of the plaintiff's case is eliminated from our consideration as support for the judgment under consideration by the course taken by the trial judge in removing it from the consideration of the jury. The trial judge charged that the plaintiff could not recover even if the defendant's servants were negligent in failing to provide sand or an efficient sand-box. This judicial utterance was the result of the conclusions of the trial court that it appeared that the plaintiff himself was negligent in failing to use due diligence in performing his duty respecting the sand-box. The only question left to the jury was whether the defendant was negligent in regard to the brake and the controller.

It is apparent that should this judgment be affirmed upon the theory that the direction in favor of the plaintiff in error was in this respect erroneous, such affirmation must rest upon the ground that negligence respecting the sand-box upon the part of the defendant below conclusively appeared, and that no negligence on the part of the plaintiff below was exhibited; that therefore there was no question to be submitted to the jury, and the court should have directed a verdict for the plaintiff.

This view was not, and could not, be rationally pressed by the counsel for the plaintiff, so whatever view may be taken of the judicial ruling upon the plaintiff's conduct in relation to the sand-box, there should be a reversal and a *venire de novo* directed.

It may also be observed that, viewing the brakes, controller and sand-box as appliances to accomplish a single purpose, namely, the arrest of the movement of the car, it would seem to follow, if the motorman was negligent in respect to the last of these, and his negligence contributed to the disaster, the plaintiff's right to recover would be defeated.

The judgment should be reversed and the *venire de novo* ordered.